1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

TAMMY SUE SABO,                    ) Case No. CV 11-4646 JCG
                                   )
            Plaintiff,             )
                                   )
      v.                           ) **MEMORANDUM OPINION AND**
                                   ) **ORDER**
MICHAEL J. ASTRUE,                 )
COMMISSIONER OF SOCIAL             )
SECURITY ADMINISTRATION,           )
                                   )
            Defendant.             )
                                   )
_____  )

## I.

## INTRODUCTION AND SUMMARY

On June 7, 2011, plaintiff Tammy Sue Sabo ("Plaintiff") filed a complaint against defendant Michael J. Astrue ("Defendant"), the Commissioner of the Social Security Administration, seeking review of a denial of supplemental security income benefits ("SSI"). [Docket No. 3.]

On December 8, 2011, Defendant filed his answer, along with a certified copy of the administrative record. [Docket Nos. 11, 12, 13.]

In sum, having carefully studied, *inter alia*, the parties' joint stipulation and the administrative record, the Court concludes that, as detailed below, there is substantial evidence in the record, taken as a whole, to support the decision of the Administrative Law Judge ("ALJ"). Thus, the Court affirms the Commissioner's

1    decision denying benefits.

2                                    **II.**

3            **PERTINENT FACTUAL AND PROCEDURAL BACKGROUND**

4            Plaintiff, who was 47 years old on the date of her administrative hearing, has

5    completed one year of college.  (*See* Administrative Record ("AR") at 11, 14, 151.)

6            On May 16, 2007, Plaintiff filed for SSI, alleging that she has been disabled

7    since January 8, 2007 due to depression, anxiety, sleeplessness, acid reflux, bladder

8    problems, and back and chest pain.  (*See* AR at 62, 151, 215.)

9            On May 10, 2010, Plaintiff, represented by counsel, appeared and testified at a

10   hearing before an ALJ.  (*See* AR at 11-38.)  The ALJ also heard testimony from

11   Sandra Snyder, a vocational expert ("VE"), and Jim Marty ("Mr. Marty"), a lay

12   witness.  (*Id.*)

13           On May 28, 2010, the ALJ denied Plaintiff's request for benefits.  (AR at 49-

14   57.)  Applying the familiar five-step sequential evaluation process, the ALJ found, at

15   step one, that Plaintiff has not engaged in substantial gainful activity since her SSI

16   application date.  (*Id.* at 51.)

17           At step two, the ALJ found that Plaintiff suffers from a severe depressive

18   disorder.  (AR at 51.)

19           At step three, the ALJ determined that the evidence did not demonstrate that

20   Plaintiff's impairment, either individually or in combination, met or medically

21   equaled the severity of any listing set forth in the Social Security regulations.[1]  (AR

22   at 52.)

23           The ALJ then assessed Plaintiff's residual functional capacity[2] ("RFC") and

24

25           [1]   *See* 20 C.F.R. pt. 404, subpt. P, app. 1.

26

27           [2]   Residual functional capacity is what a claimant can still do despite existing
     exertional and nonexertional limitations.  *Cooper v. Sullivan*, 880 F.2d 1152, 1155
28   n. 5 (9th Cir. 1989).  "Between steps three and four of the five-step evaluation, the

                                            2

1   determined that she "has no exertional or postural limitations[, but] is limited to

2   performing simple, repetitive tasks."  (AR at 53 (emphasis omitted).)

3        The ALJ found, at step four, that Plaintiff lacks the ability to perform her past

4   relevant work.  (AR at 55.)

5        At step five, based on Plaintiff's RFC and the VE's testimony, the ALJ found

6   that "there are jobs that exist in significant numbers in the national economy that

7   [Plaintiff] can perform," including sandwich maker and hand packager.  (AR at 56-

8   57 (emphasis omitted).)  Thus, the ALJ concluded that Plaintiff was not suffering

9   from a disability as defined by the Act.  (*Id.* at 50, 57.)

10       Plaintiff filed a timely request for review of the ALJ's decision, which was

11   denied by the Appeals Council.  (AR at 1-3, 148.)  The ALJ's decision stands as the

12   final decision of the Commissioner.

13                                         **III.**

14                            **STANDARD OF REVIEW**

15       This Court is empowered to review decisions by the Commissioner to deny

16   benefits.  42 U.S.C. § 405(g).  The findings and decision of the Social Security

17   Administration must be upheld if they are free of legal error and supported by

18   substantial evidence.  *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001, *as*

19   *amended* Dec. 21, 2001).  If the court, however, determines that the ALJ's findings

20   are based on legal error or are not supported by substantial evidence in the record,

21   the court may reject the findings and set aside the decision to deny benefits.

22   *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*,

23   242 F.3d 1144, 1147 (9th Cir. 2001).

24       "Substantial evidence is more than a mere scintilla, but less than a

25

26   _____

27   ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's
     residual functional capacity."  *Massachi v. Astrue*, 486 F.3d 1149, 1151 n. 2 (9th

28   Cir. 2007).

preponderance." *Aukland*, 257 F.3d at 1035.  Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459.  To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459.  The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)).  If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.

## ISSUES PRESENTED

Two disputed issues are presented for decision here:

1.     whether the ALJ properly found Plaintiff's abdominal pain and acid reflux impairments are not severe, (*see* Joint Stip. at 3-6, 7-8); and

2.     whether the ALJ properly evaluated the medical evidence.  (*Id.* at 8-13, 16-17.)

The Court addresses each argument in turn.

## V.

## DISCUSSION AND ANALYSIS

A.   Step-Two Determination

Plaintiff argues that the ALJ "addressed all of plaintiff's physical impairments by noting that [s]he gave much weight to the August 2007 report of the internal medicine Consultative Examiner, Dr. Soheila Benrazavi [("Dr. Benrazavi")], who reported no exam abnormalities and opined that . . . plaintiff had no limitations[, and]. . . noted elsewhere in the record that plaintiff complained of hand pain, but . . .

4

1  failed to address any other physical impairments[,]" particularly Plaintiff's

2  abdominal pain and acid reflux.  (Joint Stip. at 4.)

3      1.   Step-Two Inquiry Requires A "*De Minimus*" Threshold Showing

4      The threshold inquiry at step two is whether or not a claimant is suffering

5  from a severe impairment.  20 C.F.R. § 404.1520(a)(4)(ii).  The step two inquiry is

6  defined as "'a *de minimis* screening device to dispose of groundless claims.'"

7  *Edlund v. Massanari*, 253 F.3d 1152, 1158 (9th Cir. 2001, *as amended* Aug. 9,

8  2001) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)).

9      "At step two of the five-step sequential inquiry, the Commissioner determines

10  whether the claimant has a medically severe impairment or combination of

11  impairments."  *Smolen*, 80 F.3d at 1289-90.  "Important here, at the step two inquiry,

12  is the requirement that the ALJ must consider *the combined effect* of all of the

13  claimant's impairments on her ability to function, without regard to whether each

14  alone was sufficiently severe."  *Id.* at 1290 (emphasis added).

15      "An impairment or combination of impairments can be found not severe only

16  if the evidence establishes a slight abnormality that has no more than a minimal

17  effect on an individual[']s ability to work."[3/]  *Smolen*, 80 F.3d at 1290 (internal

18  quotation marks and citation omitted).  "[A]n ALJ may find that a claimant lacks a

19  medically severe impairment or combination of impairments only when his

20  conclusion is 'clearly established by medical evidence.'"  *Webb v. Barnhart*, 433

21  F.3d 683, 687 (9th Cir. 2005) (quoting Social Security Ruling ("SSR") 85-28,[4/] 1985

22

23      [3/]   "'Basic work activities' are defined as including such capabilities as use of

24  judgment; responding appropriately to supervision, co-workers and usual work

25  situations; and dealing with changes in a routine work setting[.]"  *Edlund*, 253 F.3d

26  at 1159 (internal citations omitted).

27      [4/]   "The Commissioner issues Social Security Rulings [("SSRs")] to clarify the

28  Act's implementing regulations and the agency's policies.  SSRs are binding on all

   components of the [Social Security Administration].  SSRs do not have the force of

5

1   WL 56856, at *3).

2        In addition, "if an adjudicator is unable to determine clearly the effect of an

3   impairment or combination of impairments on the individual's ability to do basic

4   work activities, the sequential evaluation should not end with the not severe

5   evaluation step." *Webb*, 433 F.3d at 687 (quoting SSR 85-28, 1985 WL 56856, at

6   *4) (brackets omitted).

7                    2.    The ALJ's Failure to Find Plaintiff's Abdominal Pain and Acid

8                          Reflux Severe at Step Two Was Harmless Error

9        Any error in the ALJ's failure to include abdominal pain and acid reflux as

10  part of Plaintiff's severe impairments at step two of the analysis was harmless.  This

11  Court's decision is grounded on three reasons.

12       First, step two was already resolved in Plaintiff's favor, *e.g.*, the ALJ found

13  Plaintiff's depressive disorder to be severe and properly continued the sequential

14  decision making process until reaching a decision at step five. *See Burch v.*

15  *Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005) (concluding any error ALJ committed

16  at step two was harmless because the step was resolved in claimant's favor); *Taylor*

17  *v. Astrue*, 2010 WL 2773337, at *2-*3 (D. Or. 2010) (any error in failing to

18  designate plaintiff's additional impairments as not severe did not prejudice him at

19  step two, as step two was resolved in plaintiff's favor because ALJ found plaintiff

20  had demonstrated several impairments necessary to satisfy step two).

21       Second, substantial evidence supports the ALJ's conclusion that Plaintiff does

22  not suffer from abdominal pain and acid reflux such that it would have more than a

23  slight effect on her ability to perform basic work activities.  (*See* AR at 51-52.)

24  Although Plaintiff's treating physicians noted Plaintiff's abdominal pain and

25  _____

26  law.  However, because they represent the Commissioner's interpretation of the
    agency's regulations, we give them some deference.  We will not defer to SSRs if
27  they are inconsistent with the statute or regulations." *Holohan v. Massanari*, 246

28  F.3d 1195, 1203 n. 1 (9th Cir. 2001) (internal citations omitted).

1  diagnosed acid reflux disease on numerous occasions, *none* of her treating

2  physicians opined that Plaintiff's stomach pain or acid reflux imposed any functional

3  limitations.  (*See, e.g., id.* at 431, 441, 470; *see also id.* at 390 (Dr. Benrazavi

4  concluding that Plaintiff suffers from no exertional limitations).)  Further, Plaintiff

5  mainly points to evidence of abdominal pain prior to her alleged onset date, (Joint

6  Stip. at 4-5), and the evidence presented pertaining to the relevant time period

7  demonstrates that Plaintiff suffered from abdominal pain only occasionally.  (*See id.*

8  at 386-390 (consultative examiner Dr. Benrazavi noting on August 1, 2007 that

9  Plaintiff "has been having stomach pain for about a week that come[s] and goes" and

10  the "pains come may[be] once or twice a day and sometimes once a day"); *see, e.g.,*

11  *id.* at 431, 441, 470); *Carmickle v. Comm'r*, 533 F.3d 1155, 1165 (9th Cir. 2008)

12  ("Medical opinions that predate the alleged onset of disability are of limited

13  relevance."); *Ingham v. Astrue*, 2010 WL 1875651, at *5 (C.D. Cal. 2010) (same).

14       Third, a review of the record indicates that Plaintiff's own statements support

15  Dr. Benrazavi's findings and the ALJ's conclusion.  For instance, at the

16  administrative hearing, the ALJ asked Plaintiff why she stopped working in January

17  of 2007.  (AR at 16.)  Plaintiff responded, "my depression came back and I guess

18  well to tell you the truth I sometimes have problems dealing with other people."

19  (*Id.*)  She also stated that she has "problems sleeping" and she "can't think right."

20  (*Id.* at 16-17; *see also id.* at 24 (Plaintiff's testimony that "if I have a steady job I just

21  feel that I . . . won't be able to concentrate right and I'll make a lot of mistakes

22  also").)  However, Plaintiff made no mention that her abdominal pain or acid reflux

23  would have even a minimal effect her ability to work.  (*See generally id.* at 13-38.)

24       With respect to her daily activities, Plaintiff testified that she cooks, cleans,

25  reads, and goes for walks in a "typical day" and visits with friends "about once a

26  week."  (AR at 22-23; *see also id.* at 377 (treating physician stating Plaintiff "can

27  properly care for her personal affairs, does her own shopping, groceries, cook, use

28  . . . public transportation, can pay own bills, and [is] fairly groomed").)  The lay

witness Mr. Marty reported that he and Plaintiff "ride bicycles" and "go out to the beach" together.  (*Id.* at 33.)  Accordingly, Plaintiff's statements concerning her activities of daily living suggest that she is quite functional and the ALJ properly discounted Plaintiff's subjective complaints of disability, a finding which Plaintiff does not contest here.  (*See id.* at 55; *see generally* Joint Stip. at 1-18.)

      B.  Evaluation of the Medical Evidence

      Plaintiff contends that "the ALJ erred by assigning little weight to the opinion of treating psychiatrist Dr. James Jung[ ("Dr. Jung")], assigning no weight to the opinion of treating psychiatrist Dr. Marina Bhumitra[ (Dr. Bhumitra")], and assigning great weight to the opinion of the Consultative Examiner, Dr. N. Paculdo [("Dr. Paculdo")]."  (Joint Stip. at 9.)

      1.    The ALJ Must Provide Specific and Legitimate Reasons Supported by Substantial Evidence to Reject a Treating Physician's Opinion

      In evaluating medical opinions, Ninth Circuit case law and Social Security regulations "distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)."  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995, *as amended* April 9, 1996); *see also* 20 C.F.R. §§ 404.1527(d) & 416.927(d) (prescribing the respective weight to be given the opinion of treating sources and examining sources).  "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant."  *Lester*, 81 F.3d at 830; *accord Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1036 (9th Cir. 2003).  This is so because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual."  *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987).

      "The opinion of an examining physician is, in turn, entitled to greater weight

1    than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830; *see also* 20

2    C.F.R. §§ 404.1527(d)(1)-(2) & 416.927(d)(1)-(2).  If the opinion of an examining

3    physician is rejected in favor of the opinion of a nonexamining physician, the ALJ

4    may do so only by providing specific and legitimate reasons.  *Lester*, 81 F.3d at 830-

5    31.  The ALJ can meet the requisite specific and legitimate standard "by setting out a

6    detailed and thorough summary of the facts and conflicting clinical evidence, stating

7    his interpretation thereof, and making findings."  *Magallanes v. Bowen*, 881 F.2d

8    747, 751 (9th Cir. 1989) (internal quotation marks and citation omitted).

9                      2.    The ALJ Properly Evaluated the Medical Evidence

10           The Court is persuaded that the ALJ properly evaluated the medical evidence

11   and her opinion is supported by substantial evidence.  Three reasons guide this

12   determination.

13           First, the ALJ assigned "little weight to the GAF score of 50 given by Dr.

14   Jung," but otherwise accepted Dr. Jung's opinion and found his treatment records

15   reflected "mild limitations and highly functional abilities[.]"  (AR at 55.)

16   Substantial evidence supports the ALJ's conclusion.  In a Mental Disorder

17   Questionnaire Form, Dr. Jung indicated that Plaintiff "is a very pleasant client, does

18   not exhibit any hostile behavior[,] . . . attends group meeting[s] and feels very

19   relax[ed,]" "gets along well with others and has some friends[,]" and "has a good

20   talking relationship with her elderly parents, friends and co-workers."  (*Id.* at 375,

21   376, 378.)  He also reported that she "can complete her everyday household chores,

22   routines" and "had a good attendance record" "as a waitress at IHOP" until she was

23   laid off.  (*Id.* at 378.)  As discussed *supra* § V.A.2, he described Plaintiff as quite

24   functional in her daily activities.  (*Id.* at 377.)

25           Further, Dr. Jung noted Plaintiff "does not report any anxiety but of being

26   irritable and moody at times" and "does not present any delusion, hallucinations,

27   paranoid behavior, confusion, mood swings or any isolation or catatonic behavior."

28   (AR at 377.)  Dr. Jung opined her prognosis to be "fair to good."  (*Id.* at 379.)  While

1    he found Plaintiff's medication compliance to be "poor" at times, (*see, e.g., id.* at

2    365, 495), he consistently reported she had "even mood" and did not opine any

3    significant mental limitations affecting her ability to work beyond indicating she can

4    follow "simple written and oral instructions." (*See id.* at 363, 365, 367, 378; *see*

5    *generally id.* at 363-85, 492-509.) Nor does Plaintiff point to any portion of Dr.

6    Jung's medical opinion that describes greater limitations than the RFC assessed by

7    the ALJ which were not properly considered and/or improperly rejected. (*See*

8    *generally* Joint Stip. at 8-13, 16-17.)

9         Second, the ALJ properly rejected Dr. Bhumitra's opinion as inconsistent with

10   her own treatment notes. (AR at 54 (ALJ assigning "no weight" to Dr. Bhumitra's

11   opinion because "it is belied by the same source records").) This is a specific and

12   legitimate reason supported by substantial evidence. *See Burkhart v. Bowen*, 856

13   F.2d 1335, 1339-40 (9th Cir. 1988) (ALJ properly rejected treating physicians'

14   opinion which was unsupported by medical findings, personal observations or test

15   reports). For instance, Dr. Bhumitra consistently found Plaintiff's orientation,

16   speech, grooming, and memory to be within normal limits, found she had no

17   delusions, auditory or visual hallucinations, or suicidal thoughts, and determined her

18   insight and judgment to be "good." (*See, e.g.,* AR at 481, 482, 483, 484, 485, 486.)

19   She also noted that Plaintiff's response to medication was "good" and Plaintiff

20   reported no side effects. (*See, e.g., id.* at 487, 488, 489, 490.) Although Plaintiff

21   points to Dr. Bhumitra's opinion from 2004 to support her position, (*see* Joint Stip.

22   at 12), this opinion substantially predates her alleged onset date and is of limited

23   relevance. *Carmickle*, 533 F.3d at 1165; *Ingham*, 2010 WL 1875651, at *5.

24        Lastly, although arguably the ALJ the improperly assigned greater weight to

25   Dr. Paculdo's opinion, any error is harmless. Dr. Paculdo found Plaintiff's "[a]bility

26   to understand, remember, and carry out complex job instructions is not significantly

27   limited," (*see* AR at 391-95); however the ALJ properly adopted treating physician

28   Dr. Jung's opinion in formulating Plaintiff's RFC. (*Compare* AR at 53 (ALJ finding

Plaintiff "is limited to performing simple, repetitive tasks"), 378 (Dr. Jung noting Plaintiff can "follow simple written and oral instructions").)

Based on the foregoing, IT IS ORDERED THAT judgment shall be entered **AFFIRMING** the decision of the Commissioner denying benefits.


Dated: March 5, 2012

_____
Hon. Jay C. Gandhi
United States Magistrate Judge

11